Jordan Susman, Esq. (SBN 246116)
jsusman@nolanheimann.com
Margo Arnold, Esq. (SBN 278288)
marnold@nolanheimann.com
NOLAN HEIMANN LLP
16133 Ventura Boulevard, Suite 820
Encino, California 91436
Telephone: (818) 574-5710
Facsimile: (818) 574-5689

Attorneys for Plaintiffs Clint Eastwood
and Garrapata, LLC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLINT EASTWOOD, an individual; GARRAPATA, LLC, a California limited liability company, <br><br> Plaintiffs, <br><br> vs. <br><br> MEDIATONAS UAB, a Lithuanian private limited company DOES 2-30, inclusive, <br><br> Defendants. | Case No.: 2:20-cv-06503-RGK-JDE <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT** <br><br> Date: June 7, 2021 <br> Time: 9:00 a.m. <br> Place: Roybal Federal Building <br> and U.S. Courthouse <br> 255 East Temple Street <br> Courtroom 850, 8th Floor <br> Los Angeles, California 90012 |

## <u>TABLE OF CONTENTS</u>

I.     **FACTUAL BACKGROUND**……………………………………1

    A.    **Plaintiffs' Rights of Publicity and Trademark**………..………1

    B.    **Defendants' Illegal Activities**………………………………2

    C.    **Mediatonas Is Responsible For The Fraudulent "Article"**…………4

II.   **PROCEDURAL HISTORY**………………………………………5

III.  **ARGUMENT**………………………………………………5

    A.    **Jurisdiction**……………………………………………5

    B.    **Default Judgment is Warranted Against Mediatonas**………………7

    C.    **Eitel Factors**……………………………………………8

        1.    **All Claims in the FAC Have Substantive Merit and are Sufficiently Alleged (Eitel Factors 1 and 2)**…………………8

            a.    **Mediatonas is Liable for Violation of Common Law Right of Publicity**…………………………………9

            b.    **Mediatonas is Liable for Violation of California Civil Code Section 3344**……………………………………10

            c.    **Mediatonas is Liable for False Endorsement Under the Lanham Act (15 U.S.C. § 1125(A)), Trademark Infringement (15 U.S.C. § 1114(1)(A)), and Common Law Trademark Infringement**……………………………10

            d.    **Mediatonas is Liable for Defamation and False Light Invasion of Privacy**……………………………………12

        2.    **The Remaining Eitel factors Support Entry of Default Judgment (Eitel Factors 3 and 7)**………………………………15

-i-

**a.** **There is Minimal Possibility of Dispute Concerning Material Facts**………..……………………………………..**15**

**b.** **There is No Evidence that Default Was Due to Excusable Neglect**………..……………………………..**15**

**c.** **Plaintiffs Will Suffer Prejudice if Default Judgment is Not Entered**………..……………………………..**16**

**d.** **Policy Favoring Decision on the Merits Does Not Warrant Denying Default Judgment**……...............**17**

**e.** **Sum of Money at Stake**………..……………………………..**17**

**D.** **Remedies and Damages**………..…………………………………..**17**

    **1.** **Permanent Injunction**………..……………………………….**17**

    **2.** **Monetary Damages**………..……………………………..**19**

        **a.** **Misappropriation Claims**………..……………….....**19**

            **i.** **Market Value**………..……………………………..**19**

            **ii.** **Injury to Peace, Happiness and Feelings**………..**20**

            **iii.** **Injury to Reputation and Goodwill**…………….**22**

            **iv.** **Punitive Damages**………..……………………………..**2**

            **v.** **Attorneys' Fees and Costs**………..……………..**23**

        **b.** **Trademark Claims**………..……………………………..**25**

            **i.** **Actual Damages**………..……………………………..**25**

            **ii.** **Enhanced Damages**………..……………………………..**25**

            **iii.** **Attorneys' Fees**………..……………………………..**26**

        **c.** **Defamation and False Light**………..………………**27**

-ii-

i.      **Actual Damages**…….........................................**27**

ii.     **Punitive Damages**……........................................**27**

**IV.**   **CONCLUSION**…….......................................................**28**

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES:</u>

*A.C.T. 898 Prod., Inc. v. Door to Door Nail Supply*,
    No. CV1504520SJOMRWX, 2015 WL 12791424
    (C.D. Cal. Nov. 13, 2015)……………………………………..…………………....10

*Adams v. Murakami*,
    54 Cal. 3d 105 (1991)…..……………………………………..…..23

*Aldabe v. Aldabe*,
    616 F.2d 1089 (9th Cir. 1980)..…………………………………….8

*ALPO Petfoods v. Ralston Purina Co*.,
    778 F. Supp. 555 (D.D.C. 1991)………………………………..…..25

*Amoco Prod. Co. v. Vill. of Gambell*, AK,
    480 U.S. 531 (1987)…………..……………………………………17

*Bedavailability.Com v. A Bed Available*, LLC,
    No. 06CV2401LABLSP, 2007 WL 627964 (S.D. Cal. Feb. 13, 2007)………..7

*Bernardi v. County of Monterey*,
    167 Cal. App. 4th 1379 (2008)…………………………………..…..24

*Black v. Lane*,
    22 F.3d 1395 (7th Cir. 1994)…..…………………………………….9

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp*.,
    174 F.3d 1036 (9th Cir. 1999)…………...……………………………11

*Building a Better Redondo, Inc. v. City of Redondo Beach*,
    203 Cal. App. 4th 852 (2012)……………………………………..…..24

*Century 21 Real Estate Corp. v. Sandlin*,
    846 F.2d 1175 (9th Cir. 1988)…………………………………...……11

*Clearline Techs. Ltd. v. Cooper B-Line, Inc*.,
    948 F. Supp. 2d 691 (S.D. Tex. 2013)………………………………..25

-iv-

*Computer Entertainment America Inc. v. GameMasters*,
    87 F. Supp. 2d 976 (N.D. Cal. 1999)……………………………………………18

*Cyma (U.S.A.) Ltd. v. Lumondi*, Inc.,
    2011 WL 1483394 (N.D. Cal. 2011)……………………………………......24

*Danning v. Lavine,*
    572 F.2d 1386 (9th Cir. 1978)……………………………………………......8

*Discovery Communications, Inc. v. Animal Planet, Inc.*,
    172 F. Supp. 2d 1282 (C.D. Cal. 2001)………………………………......26

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001)…....……………………………………………6

*Downing v. Abercrombie & Fitch*,
    265 F.3d 994 (9th Cir. 2001) ……………………………………………10

*Einstein v. Baby Einstein Co. LLC*,
    No. CV0702171MMMSSX, 2009 WL 10670676
    (C.D. Cal. Dec. 21, 2009) ……………………………………………10

*Eitel v. McCool*,
    782 F.2d 1470 (9th Cir. 1986) ……………………………………………...8

*Emerald Worldwide Holdings, Inc*.,
    No. CV03-8339AHM, 2005 WL 1130588 (C.D. Cal. Apr. 19, 2005)………..19

*Garden City Boxing Club, Inc. v. Aranda*,
    384 F. App'x 688 (9th Cir. 2010) ……………………………………………19

*Grant v Esquire*,
    367 F. Supp. 876 (S.D.N.Y. 1973) ……………………………………………...21

*Halsey v. Colonial Asset Mgmt*.,
    No. 5:13-cv-02025, 2014 WL 12601015 (C.D. Cal. July 17, 2014) …………16

*Hawran v. Hixson*,
    209 Cal. App. 4th 256 (2012) ……………………………………………...12

-v-

*Hirsch v. S.C. Johnson & Son, Inc.*,
    90 Wis. 2d 379 (1979)) ……………………………………………………..20, 22

*In re Tuli*,
    172 F.3d 707 (9th Cir. 1999) …………………………………………………..7

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ……………………………………………………...6

*Kapellas v. Kofman*,
    1 Cal. 3d 20, (1969) ……………………………………………………..12

*Kirby v. Sega of Am., Inc.*,
    144 Cal. App. 4th 47 (2006) …………………………………………....24

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
    988 F.2d 1117 (Fed. Cir. 1993) …………………………………………16

*Laws v. Sony Music Entm't, Inc.*,
    448 F.3d 1134 (9th Cir. 2006) …………………………………………….9

*Love v. Associated Newspapers*, Ltd.,
    611 F.3d 601 (9th Cir. 2010) …………………………………………….26

*Luxul Tech. Inc. v. Nectarlux, LLC*,
    78 F. Supp. 3d 1156 (N.D. Cal. 2015) ………………………………………...7

*Maughan v. Google Technology, Inc.*,
    143 Cal. App. 4th 1242 (2006) …………………………………………24

*Midler v. Ford Motor Co.*,
    849 F.2d 460 (9th Cir. 1988) ……………………………………………19

*Milkovich v. Lorain J. Co.*,
    497 U.S. 1 (1990) ……………………………………………………16

*PepsiCo, Inc. v. California Sec. Cans*,
    238 F. Supp. 2d 1172 (C.D. Cal. 2002) ………………………………………17

*PepsiCo v. Triunfo-Mex, Inc.*,

-vi-

189 F.R.D. 431 (C.D. Cal. 1999) ……………………………………………..8

*Playboy Enterprises, Inc. v. Baccarat Clothing Co.*,
    692 F.2d 1272 (9th Cir. 1982) …………………………………………..25

*PLCM Grp. v. Drexler*,
    22 Cal. 4th 1084 (2000) ……………………………………………...24

*Philip Morris, USA, Inc. v. Castworld Prods, Inc.*,
    219 F.R.D. 494 (C.D. Cal. 2003) ……………………………………...8

*Phillip Morris USA Inc. v. Shalabi*,
    352 F. Supp. 2d 1067 (C.D. Cal. 2004) ……………………………………18

*Raining Data Corp. v. Barrenechea*,
    175 Cal. App. 4th 1363 (2009) ……………………………………………24

*Ramos-Falcon v. Autoridad de Energia Electrica*,
    301 F.3d 1 (1st Cir. 2002) …………………………………………..9

*Raven's Cove Townhomes, Inc. v. Knuppe Development Co.*,
    114 Cal. App. 3d 783 (1981) …………………………………………27

*Rearden LLC v. Rearden Commerce, Inc.*,
    683 F.3d 1190 (9th Cir. 2012) …………………………………………..11

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) …………………………………………..6

*Sher v. Johnson*,
    911 F.2d 1357 (9th Cir. 1990) …………………………………………..6

*Sky Billiards, Inc. v. Loong Star, Inc.*,
    No. EDCV 14-921 JGB, 2016 WL 6661175
    (C.D. Cal. Mar. 17, 2016) …………………………………………..8, 15, 16

*Skydive Arizona, Inc. v. Quattrocchi*,
    673 F.3d 1105 (9th Cir. 2012) …………………………………………..25

*Soilworks, LLC v. Midwest Indus. Supply, Inc.*,
    575 F. Supp. 2d 1118 (D. Ariz. 2008) …………………………………………..12

-vii-

*Solano v. Playgirl, Inc.*,
   292 F.3d 1078 (9th Cir. 2002) ……………………………………………9

*Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*,
   932 F.2d 1113 (5th Cir. 1991) …………………………………………..25

*Taus v. Loftus*,
   40 Cal. 4th 683 (2007) ……………………………………………………12

*TeleVideo Systems, Inc. v. Heidenthal*,
   826 F.2d 915 (9th Cir. 1987) ……………………………………………15

*Vogel v. Rite Aid Corp.*,
   992 F. Supp. 2d 998 (C.D. Cal. 2014)……………………………………16

*Waits v. Frito-Lay, Inc.*,
   978 F.2 1093 (9th Cir. 1992) ………………………………..19, 21, 22, 23

*Weil Ceramics & Glass, Inc. v. Dash*,
   878 F.2d 659 (3d Cir. 1989) ……………………………………………16

*Wong v. Jing*,
   189 Cal. App. 4th 1354 (2010) …………………………………………27

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
   433 F.3d 1199 (9th Cir. 2006)……………………………………………7

*Zynga Game Network Inc. v. Williams*,
   2011 WL 2560240 (N.D. Cal. June 28, 2011) …………………………26


**STATUTES:**

Cal. Civ. Code § 3294(a) ……………………………………………………23
Cal. Civ. Code § 45………………………………………………………12
Cal. Civ. Proc. Code § 410.10………………………………………………..6
Fed. R. Civ. P. 8(b)(6) ………………………………………………………8
Fed. R. Civ. P. 55(b)(2) ……………………………………………………8
Fed. R. Civ. P. 55(b) ………………………………………………………8
L.R. 55-1………………………………………………………………………8
21 U.S.C. § 801 *et seq*………………………………………………………21

-viii-

15 U.S.C. § 1117(a)...26

7 U.S.C. 1621 *et seq*....................................................................................21

-ix-

1   Pursuant to Fed. R. Civ. P. 55(b), Plaintiffs Clint Eastwood and Garrapata,

2   LLC (collectively, "Plaintiffs") respectfully request that the Court enter final

3   judgment by default against Mediatonas UAB ("Mediatonas").

## I.   FACTUAL BACKGROUND

### A.   Plaintiffs' Rights of Publicity and Trademark

6   Clint Eastwood is recognized around the world as an icon of the entertainment

7   industry.  (FAC ¶ 14). After rising to fame in the 1950s as the star of the TV series

8   *Rawhide*, Mr. Eastwood became one of the world's biggest movie stars with his

9   roles as the "Man With No Name" in a series of Westerns in the late 1960s and the

10  *Dirty Harry* films of the 1970s and 80s.  (*Id*.). In 1971, Mr. Eastwood directed his

11  first of more than 30 motion pictures, including the Academy Award winning Best

12  Pictures *Unforgiven* (1992) and *Million Dollar Baby* (2004). (*Id*.). In addition to his

13  successful career in the entertainment industry, Mr. Eastwood served as the mayor of

14  Carmel-by-the-Sea in the late-1980s.  (*Id*.).

15  Garrapata is the owner of the rights of publicity in Mr. Eastwood's name,

16  image, likeness, and persona for all purposes, other than those related to the

17  promotion and exploitation of the motion pictures Mr. Eastwood makes.  (FAC ¶ 8;

18  Eastwood Decl. ¶ 2; Bernstein Decl. ¶¶ 2, 3).  Among other things, Garrapata owns a

19  federally registered trademark U.S. Registration No. 3265483 in Mr. Eastwood's

20  name for "Entertainment services, namely, personal appearances and live

21  performance and live recorded performances by a movie star and actor" (the

22  "Registered Mark"). (FAC ¶ 50; Bernstein Decl. ¶ 4, Exh. 1).

23  Additionally, by virtue of Mr. Eastwood's longstanding and continuous use of

24  the Registered Mark in commerce, Garrapata has acquired a valid common law

25  trademark in Mr. Eastwood's name. (FAC ¶ 51). The public has come to recognize

26  the Registered Mark as exclusively identifying Mr. Eastwood, and the mark is

27  famous worldwide.  (FAC ¶ 14). Garrapata has selectively used the trademark

28

-1-

1   CLINT EASTWOOD in commerce in connection with Mr. Eastwood's products and
2   services. (FAC ¶ 49; Eastwood Decl. ¶ 2; Bernstein Decl. ¶ 3).

3          **B.      Defendants' Illegal Activities**

4          Among the top results of an online search for "Clint Eastwood CBD" is a
5   website for go.ushealthynews.com, with the headline "Big Pharma in Outrage over
6   Clint Eastwood's CBD."  (FAC ¶ 17; Susman Decl. ¶ 2, Exh. 1).

7          In addition, Defendants send emails with the subject line, "Clint Eastwood
8   Exposes Shocking Secret Today."  (FAC ¶ 18; Susman Decl. ¶ 3, Exh. 2). In the
9   body of the email is an apparent article from NBC's Today show with a picture of
10  Mr. Eastwood under the headline "Breaking News: Clint Eastwood Exposes
11  Shocking Secret Today."  (*Id.*).

12         When one clicks on the link for go.ushealthynews.com in the online search
13  results or the purported Today show report in the spam email, it takes the consumer
14  to a website featuring a fraudulent "news article" purportedly written by a journalist
15  named Alice Palmer that is automatically programmed to appear as if the article was
16  published on the date that a user views the website.  The content of the article
17  generally remains the same, even when the header of the website varies.  For
18  example, the website URL is sometimes allocated to www.go.ushealthynews.com,
19  but the header of the website sometimes makes it appear as if it was published by
20  "Entertainment Today."  Other times, the website URL is allocated to usmagazine-
21  trending-news.com to make it appear that the article is associated with US Weekly
22  magazine.  (FAC ¶ 19; Susman Decl. ¶¶ 4, 5, Exhs. 3-9).

23         The CBD products advertised and sold on the fraudulent "article" include Sera
24  Relief (Susman Decl. ¶ 4, Exh. 3), Euphoric CBD (Susman Decl. ¶ 5, Exhs. 4, 5, 6),
25  and Patriot Supreme (Susman Decl. ¶ 5, Exh. 7). (FAC ¶ 20).

26         Other than the names of the products being advertised and sold, the verbiage
27  of the fraudulent "article" does not change substantially, stating among other things:

28
                                          -2-

In an emotional 1-on-1 interview, one of America's most respected icons revealed that he wouldn't be where he is without CBD. We all know and love Clint Eastwood as the charismatic actor and director who has never been shy about advocating for marijuana use. He has always been focused on making movies, going on tour, and promoting America. However, he shocked everyone when he announced his new CBD line, [CBD product], would be the next step in his career.

In recent developments, Eastwood revealed that he would be stepping away from the spotlight to put more time into his wellness business, now that it has grown so fast:

"This was a really, really difficult decision for me. When I started this whole thing back in 2015, it really was just a part time passion project and a way for me to give back. Now here we are almost 5 years later and [CBD product] has steadily grown into a full-fledged business that's helped thousands of people become pain free and much happier. My line gives me a chance to do something bigger than movies and I knew I would regret it for the rest of my life if I let that opportunity pass me by."

Eastwood went on to say that he never really expected things to get this big and that several studios and sponsors were furious that he was splitting up his time. In fact, relations with some studios grew so tense that they ended up giving him an ultimatum - acting or his wellness line. . . .

The product Eastwood is referring to is his breakthrough CBD wellness line [CBD product]. The star has spent the past four years developing a line of highly effective and highly potent wellness products that he claims are the solution for those who don't want to resort to using opiates.

His product [CBD product] sold out within ten minutes when first launched and it seems the world can't get enough of the benefits and results.

Eastwood even admitted that big pharma companies are furious with him after noticing a large decline in sales since [CBD product] was launched on the market.

"Users of [CBD product] are experiencing results that before now were only possible through prescription medication. It's obviously a much cheaper, and safer alternative and because of that pharmaceutical companies are finding it harder to keep patients using their prescriptions."

Having a crowd of angry pharmaceutical companies is a unique

-3-

and effective endorsement for [CBD product], but Eastwood has still been proactive in getting [CBD product] into the hands of those who need it. . . .

While making an appearance on 'TV Show' he gifted the cast and crew with [CBD product] products and made sure every guest was given a sample of the life changing supplement. Since then, he has cultivated a huge celebrity clientele who are regularly reordering the products. See for yourself!

(FAC ¶ 21; Susman Decl. ¶¶ 4, 5 Exhs. 3-9).

The fraudulent "article" further states: "Eastwood's new line has been a huge hit amongst fellow celebs who got to try the initial launch of [CBD product]" followed by a series of false testimonials from Terry Bradshaw, Sam Elliott, Michael J. Fox, and Garth Brooks about Mr. Eastwood's purported CBD product.  (FAC ¶ 22; Susman Decl. ¶¶ 4, 5 Exhs. 3-9).  The fraudulent "article" concludes with a false claim that "Eastwood is offering our lucky readers the chance to try [CBD product]!" and urging people to purchase the product.  (*Id*.).  Links on the webpage allow the viewer to purchase the CBD products being touted by Mr. Eastwood.  (FAC ¶ 23; Susman Decl. ¶¶ 4, 5 Exhs. 3-9).

**C.    Mediatonas Is Responsible For The Fraudulent "Article"**

Mediatonas is responsible for publishing the fraudulent "article."  Among other things:

- Mediatonas owns the websites ushealthynews.com and usmagazine-trending-news.com, where the fraudulent "article" appears (FAC ¶ 24; Susman Decl. ¶ 6 Exh. 10);

- Mediatonas created the fraudulent "article" to promote and sell CBD products (FAC ¶ 24; Susman Decl. ¶¶ 5, 6, Exhs. 4-10);

- To avoid suspicion, Mediatonas created and sent to Sera Labs' marketing company, Express Revenue, a fake website advertising Sera Labs' products that did not mention Mr. Eastwood. (FAC ¶ 24; Kaufman Decl. ¶¶ 1-5). Mediatonas' website deliberately misleads visitors into believing it is an

-4-

American company.  Among other things, it refers to itself as "Mediatonas LLC" when it is not a limited liability company, but a Lithuanian private limited company (UAB).  (Susman Decl. ¶¶ 6, 7 Exh. 10, 11). In addition Mediatonas' website prominently displays a phone number with a Virginia area code. (Susman Decl. ¶ 7 Exh. 11). However, when one calls the number, it either rings without answer or rings and then gives a busy signal. (Susman Decl. ¶ 7).

## II.   **PROCEDURAL HISTORY**

Plaintiffs filed their original complaint in this action on July 22, 2020. In the original complaint, Plaintiffs named as defendants the companies whose products were being advertised in the fraudulent "article." (Complaint ¶¶ 9-11) (Dkt. 2).

On July 28, 2020, this Court granted Plaintiffs' ex parte application for a TRO and a request to conduct expedited discovery to identify the Doe defendants. (Dkt. 15).  Through such discovery, Plaintiffs obtained information regarding Mediatonas' liability, and the Court granted Plaintiffs leave to file the FAC. (Dkt. 38, 50).

On February 19, 2021, the Court granted Plaintiffs' Ex Parte Application to serve the FAC and summons on Mediatonas via email and Skype. (Dkt. 52).

On February 22, 2021, Plaintiffs served the summons and FAC on Mediatonas via email and Skype. (Dkt. 53).

Upon request of Plaintiffs, the clerk entered Mediatonas' default on March 18, 2021. (Dkt. 59).

## III.   **ARGUMENT**

### A.   **Jurisdiction**

The Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), as this is a civil action arising under federal law, the Lanham Act of 1946 as amended (codified at 15 U.S.C. §§ 1051, et seq.). The pendent state law claims are so related to the federal claims that they form part of the same case or controversy pursuant to Article III of the United States Constitution. The Court therefore has

-5-

1   supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a).

2     The Court possesses personal jurisdiction over Mediatonas because

3   Mediatonas purposefully directed its activities and consummated transactions in

4   California in carrying out its illegal scheme and because its scheme is inflicting harm

5   on businesses and consumers in California. FAC ¶¶ 7, 8.

6     California's long-arm statute is coextensive with the reach of federal due

7   process. Cal. Civ. Proc. Code § 410.10. Therefore, to exercise personal jurisdiction

8   over a nonresident, defendant need only have "certain minimum contacts" with the

9   relevant forum "such that the maintenance of the suit does not offend traditional

10  notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S.

11  310, 316 (1945) (internal quotation marks omitted). This means "defendant's conduct

12  and connection with the forum State must be such that the defendant should

13  reasonably anticipate being haled into court there." *Sher v. Johnson*, 911 F.2d 1357,

14  1361 (9th Cir. 1990) (internal quotation marks omitted).

15    This Court has specific jurisdiction over Mediatonas because its "contacts with

16  the forum give rise to the cause of action before the court." *Doe v. Unocal Corp*., 248

17  F.3d 915, 923 (9th Cir. 2001). The Ninth Circuit evaluates specific jurisdiction using

18  a three-part test: (1) The non-resident defendant must purposefully direct its activities

19  or consummate some transaction with the forum or resident thereof; or perform some

20  act by which it purposefully avails itself of the privilege of conducting activities in

21  the forum, thereby invoking the benefits and protections of its laws; (2) the claim

22  must be one which arises out of or relates to the defendant's forum-related activities;

23  and (3) the exercise of jurisdiction must comport with fair play and substantial

24  justice, i.e. it must be reasonable. *Schwarzenegger v. Fred Martin Motor Co*., 374

25  F.3d 797, 802 (9th Cir. 2004). Under this test, the purposeful availment prong,

26  requires a showing that "defendant allegedly must have (1) committed an intentional

27  act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows

28

-6-

is likely to be suffered in the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205-06 (9th Cir. 2006) (*quoting Calder v. Jones*, 465 U.S. 783 (1984)). "If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state." *Id*. at 1207.

Mr. Eastwood is a well known California resident, and it was reasonably foreseeable that the effect of Mediatonas' unlawful activities would be felt here by Mr. Eastwood.  *See Bedavailability.Com v. A Bed Available*, LLC, No. 06CV2401LABLSP, 2007 WL 627964, at *2 (S.D. Cal. Feb. 13, 2007) ("The Ninth Circuit has spoken clearly to this issue, holding that, even where a defendant never enters the plaintiff's home state but merely posts material accessible on the internet giving rise to a Lanham Act claim, a district court in the plaintiff's home state has personal jurisdiction over the defendant because infringement would create an injury which would be felt mainly in that state.").

Mediatonas' acts have caused harm to Plaintiffs, Mr. Eastwood's fan base, and the public in California. *See, e.g., Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1179 (N.D. Cal. 2015) (willful copyright infringement on website combined with false representations to consumer in California support specific jurisdiction over out-of-state defendants).

Because Plaintiffs' claims arise out of Mediatonas' activities in California and/or were directed to California, there is nothing unreasonable about exercising jurisdiction here.

**B.     Default Judgment is Warranted Against Mediatonas**

Following an entry of default, Fed. R. Civ. P. 55(b) permits the Court to enter default judgment in the plaintiff's favor. In considering a motion for default judgment, a court must first determine that it possesses "jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The

decision to enter default judgment is then left to the sound discretion of the court. *See* Fed. R. Civ. P. 55(b); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092-93 (9th Cir. 1980).

When deciding whether to grant default judgment, the Ninth Circuit considers the following factors: (1) the merits of plaintiff's substantive claim; (2) the sufficiency of the complaint; (3) the possibility of a dispute concerning material facts; (4) whether default was due to excusable neglect; (5) the possibility of prejudice to the plaintiff if the motion is denied; (6) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits; and (7) the sum of money at stake in the action (collectively, the "Eitel factors"). *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "In applying this discretionary standard, default judgments are more often granted than denied." *PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999). As detailed below, each *Eitel* factor weighs in favor of granting Plaintiffs' Motion for Default Judgment against Mediatonas. Further, the Plaintiffs have met the procedural requirements required by Fed. R. Civ. P. 55(b) and the Local Rules of the Court. *See* Fed. R. Civ. P. 55(b)(2); L.R. 55-1; Susman Decl. ¶¶ 8-11 (setting forth information required by L.R. 55-1).

## C.   Eitel Factors

### 1.   All Claims in the FAC Have Substantive Merit and are Sufficiently Alleged (Eitel Factors 1 and 2)

The first two Eitel factors assess the substantive merit of the movant's claims and the sufficiency of its pleadings. These factors require that a plaintiff "state a claim upon which it may recover." *Philip Morris, USA, Inc. v. Castworld Prods, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003); *see also Danning v. Lavine,* 572 F.2d 1386, 1388 (9th Cir. 1978). In considering a motion for default judgment, "'well-pleaded factual allegations' are accepted as true, except for allegations relating to damages." *Sky Billiards, Inc. v. Loong Star, Inc.*, No. EDCV 14-921 JGB, 2016 WL 6661175, at *3 (C.D. Cal. Mar. 17, 2016) (quoting *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one

-8-

1  relating to the amount of damages—is admitted if a responsive pleading is required

2  and the allegation is not denied."). In fact, it is improper for the court to consider

3  liability issues if it does not first give notice to plaintiff that the merits will be

4  addressed. *Black v. Lane*, 22 F.3d 1395, 1398 (7th Cir. 1994); *Ramos-Falcon v.*

5  *Autoridad de Energia Electrica*, 301 F.3d 1, 3 (1st Cir. 2002).

6      As detailed below, the Plaintiffs adequately pleaded their claims against

7  Mediatonas.

8                    **a.    Mediatonas is Liable for Violation of Common Law
                              Right of Publicity**

9      To recover on a misappropriation of name or likeness claim, a plaintiff must

10  prove "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of

11  plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3)

12  lack of consent; and (4) resulting injury." *Laws v. Sony Music Entm't, Inc*., 448 F.3d

13  1134, 1138 (9th Cir. 2006). Garrapata can easily establish each of these elements.

14      First, Defendants are clearly using Mr. Eastwood's name and likeness to their

15  commercial advantage.  The internet is replete with versions of the fraudulent

16  "article" bearing the headline "Big Pharma In Outrage Over Clint Eastwood's CBD:

17  [Name of CBD Product] - He Fires Back With This!" (Susman Decl. ¶¶ 4, 5, Exhs. 3-

18  9).  The fraudulent "article" prominently features photographs of Mr. Eastwood and

19  references a fabricated interview with Mr. Eastwood in which he touts his purported

20  line of CBD products.  (*Id*.).  Mediatonas owns the website on which the fraudulent

21  "article" appeared and uses it to sell CBD products.  (Susman Decl. ¶¶ 4-6, Exhs. 3-

22  10).

23      Second, Plaintiffs never consented to such a use.  (Eastwood Decl. ¶ 2;

24  Bernstein Decl. ¶ 3).

25      Third, Plaintiffs have been damaged by Defendant's misuse of Mr. Eastwood's

26  name, as the measure of damages includes the economic value of the use of the

27  plaintiff's name, which is in the millions of dollars.  *Solano v. Playgirl, Inc*., 292 F.3d

28

-9-

1078, 1090 (9th Cir. 2002); *see infra.*

### b. Mediatonas is Liable for Violation of California Civil Code Section 3344

Under Civil Code section 3344, a plaintiff must prove all the elements of the common law cause of action for violation of rights of publicity plus (1) a knowing use by the defendant and (2) a direct connection between the use and the commercial purpose. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001). Both additional elements are present here.

First, Mediatonas' misuse of Mr. Eastwood's name and likeness in the fraudulent "article" was no accident, and it did not happen by happenstance. Mediatonas knowingly created the "article" about Mr. Eastwood, knowingly selected and inserted photographs of Mr. Eastwood, and knowingly purchased a domain name and posted the "article."

Second, the entire purpose of the "article" was to sell CBD products. Links on the webpage allow the viewer to purchase the CBD products being touted by Mr. Eastwood. (FAC ¶ 23; Susman Decl. ¶¶ 4, 5 Exhs. 3-9). Accordingly, Plaintiffs succeed on their section 3344 claim.

### c. Mediatonas is Liable for False Endorsement Under the Lanham Act (15 U.S.C. § 1125(A)), Trademark Infringement (15 U.S.C. § 1114(1)(A)), and Common Law Trademark Infringement.

The elements of claims for False Endorsement under the Lanham Act, Trademark Infringement under the Lanham Act, and common law trademark infringement are identical. *See Einstein v. Baby Einstein Co. LLC*, No. CV0702171MMMSSX, 2009 WL 10670676, at *4 (C.D. Cal. Dec. 21, 2009) ("The elements of trademark infringement, false endorsement, and unfair competition claims under the Lanham Act are identical."); *A.C.T. 898 Prod., Inc. v. Door to Door Nail Supply*, No. CV1504520SJOMRWX, 2015 WL 12791424, at *5 (C.D. Cal. Nov.

-10-

13, 2015) ("The elements of a claim for common law trademark infringement in California are the same as the elements of a trademark infringement claim under federal law: ownership of a mark and likelihood of confusion"); *see also Rearden LLC v. Rearden Commerce, Inc*., 683 F.3d 1190, 1221 (9th Cir. 2012) (holding that California state law claims for trademark infringement and unfair competition are "subject to the same legal standards" as a Lanham Act trademark claim).

Under the Federal Trademark Act, 15 U.S.C. §§ 1114 *et seq*., a plaintiff in a trademark infringement action must show that a defendant without consent used in commerce, a reproduction, counterfeit, copy, or colorable imitation of plaintiff's registered mark, in connection with distributing goods, and that such use is likely to cause confusion, or to cause mistake, or to deceive. *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988).

As discussed above, Garrapata owns all rights related to the Registered Mark in Mr. Eastwood's name and all common law trademark rights, and Mediatonas has used the mark in commerce to sell CBD products without Plaintiffs' consent. Even if a consumer eventually figures out that Mr. Eastwood is not associated with the CBD products, Mediatonas created "initial interest confusion" which occurs when a defendant uses the plaintiff's mark "in a manner calculated to capture initial consumer attention." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp*., 174 F.3d 1036, 1062 (9th Cir. 1999).

> Once the consumer's attention is captured, the consumer might well realize that he or she has arrived at the defendant's (and not the plaintiff's) website, and yet might stay there and purchase the defendant's similar products. Although a sale procured in this manner does not ultimately result from the consumer's confusion as to the source of the products, it is procured nonetheless through the defendant's unfair use of the plaintiff's trademark and associated goodwill. Thus, the wrongful act is the defendant's use of the plaintiff's mark to divert consumers

-11-

to a website that 'consumers know' is not the plaintiff's website.

*Soilworks, LLC v. Midwest Indus. Supply, Inc.*, 575 F. Supp. 2d 1118, 1130 (D. Ariz. 2008) (internal quotes and citations omitted).

At a minimum, Mediatonas' use of Mr. Eastwood's name and likeness in the fraudulent "article" created initial interest confusion, as it appears that Mediatonas is selling CBD products that are manufactured by, associated with, and/or endorsed by Mr. Eastwood.  Indeed, the entire gist of the fraudulent "article" is that Mr. Eastwood has developed a line of CBD products and, "Eastwood is offering our lucky readers the chance to try [CBD product]!" (Susman Decl. ¶¶ 4, 5 Exhs. 3-9).  Such use of Mr. Eastwood's name and likeness to promote and sell CBD products constitutes common law trademark infringement and False Endorsement and Trademark Infringement under the Lanham Act.

### d.   Mediatonas is Liable for Defamation and False Light Invasion of Privacy

The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage. *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007); *see also* Cal. Civ. Code § 45 ("Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation.").

The elements of a false light claim are identical to the elements of a defamation claim. *Hawran v. Hixson*, 209 Cal. App. 4th 256, 277 (2012); *Kapellas v. Kofman*, 1 Cal. 3d 20, 35 n.16 (1969) (en banc) ("Insofar as the instant plaintiff's right to privacy action is of the 'false light in the public eye' variety, resting on the allegedly false nature of the editorial statements, we find the action is in substance equivalent to the children's libel claim, and should meet the same requirements of the libel claim on all

-12-

aspects of the case.").

Mr. Eastwood can easily show each of these elements.

The fraudulent "article" contains false statements of fact, including without limitation:

a.     "In an emotional 1-on-1 interview, one of America's most respected icons revealed that he wouldn't be where he is without CBD";

b.     "[Mr. Eastwood] shocked everyone when he announced his new CBD line, [CBD product], would be the next step in his career";

c.     "Eastwood revealed that he would be stepping away from the spotlight to put more time into his wellness business";

d.     "several studios and sponsors were furious that he was splitting up his time";

e.     "relations with some studios grew so tense that they ended up giving him an ultimatum - acting or his wellness line";

f.     "The star has spent the past four years developing a line of highly effective and highly potent wellness products that he claims are the solution for those who don't want to resort to using opiates";

g.     "Eastwood even admitted that big pharma companies are furious with him after noticing a large decline in sales since [CBD product] was launched on the market";

h.     "Eastwood has still been proactive in getting [CBD product] into the hands of those who need it";

i.     "While making an appearance on 'TV Show' he gifted the cast and crew with [CBD product] and made sure every guest was given a sample of the life changing supplement";

j.     "Eastwood is offering our lucky readers the chance to try [CBD product]!".

-13-

1 | (Susman Decl. ¶¶ 4, 5 Exhs. 3-9).

2 The fraudulent "article" also contains false statements of fact that are attributed
3 to Mr. Eastwood himself, including: "'When I started this whole thing back in 2015,
4 it really was just a part time passion project and a way for me to give back. Now here
5 we are almost 5 years later and [CBD product] has steadily grown into a full-fledged
6 business that's helped thousands of people become pain free and much happier. My
7 line gives me a chance to do something bigger than movies and I knew I would regret
8 it for the rest of my life if I let that opportunity pass me by.'" (*Id.*).

9 The fraudulent "article" also contains false statements of fact that are attributed
10 to other celebrities including, Terry Bradshaw ("'Eastwood gave me a sample of
11 [CBD product]") and Michael J. Fox ("'The advances Eastwood has made in the
12 CBD industry are remarkable.'").  (*Id.*).

13 Each of the foregoing statements are demonstrable false.  In truth: Mr.
14 Eastwood: (1) does not use CBD products; (2) does not attribute his health and/or
15 successful career to his purported use of CBD products; (3) has not developed nor
16 announced a line of CBD products; (4) has not claimed that CBD products would be
17 the next step in his career; (5) will not step away from his entertainment career to put
18 more time into his purported wellness business; (6) did not start a purported CBD
19 business in 2015 as a passion project; (7) film studios and sponsors are not angry
20 with Mr. Eastwood (because he is not splitting his time on his purported CBD
21 business); (8) no film studios gave Mr. Eastwood an ultimatum; (9) pharmaceutical
22 companies are not angry with Mr. Eastwood (because he has not developed any CBD
23 products); (10) has not delivered his purported CBD products to people including
24 other celebrities (because Mr. Eastwood has not developed such products); (11) is not
25 selling his purported CBD products online.  (Eastwood Decl. ¶ 3).

26 The allegations in the fraudulent "article" have clearly exposed Mr. Eastwood
27 to hatred, contempt, ridicule, and obloquy and/or harmed Mr. Eastwood in his trade

28

-14-

or profession, as he is a full-time filmmaker, and does not have a side business of making CBD products.

Accordingly, there can be no dispute that Mediatonas is liable for defamation and false light invasion of privacy.

### 2. The Remaining Eitel factors Support Entry of Default Judgment (Eitel Factors 3 and 7)

#### a. There is Minimal Possibility of Dispute Concerning Material Facts

Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages. *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Here, Plaintiffs filed a well-pleaded complaint alleging the facts necessary to establish their claims, and the clerk of the Court entered default against Mediatonas. No dispute has been raised regarding the material facts in the FAC, and the likelihood that any genuine issue may exist is, at best, remote. *See Sky Billiards, Inc.*, 2016 WL 6661175, at *5 (defendants' failure to respond "supports the conclusion that the possibility of a dispute as to the material facts is minimal").

#### b. There is No Evidence that Default Was Due to Excusable Neglect

Mediatonas' failure to respond to the FAC is not the result of "excusable neglect." Plaintiffs have diligently prosecuted this case since its inception, while Mediatonas has failed to answer, plead or defend in this action. Mediatonas was properly served with the summons, the FAC, and all associated papers on February 22, 2021. (Dkt. 53).  Mediatonas' response to the FAC was due on or before March 15, 2021, and the clerk entered default against Mediatonas on March 18, 2021. (Dkt. 59).

In light of these facts, there is nothing to indicate that Mediatonas' failure to

plead or respond to the FAC is due to excusable neglect. *See Halsey v. Colonial Asset Mgmt.*, No. 5:13-cv-02025, 2014 WL 12601015, at *2 (C.D. Cal. July 17, 2014) ("Defendant was served with the summons and Complaint, but has failed to appear in this action. Therefore, there is no indication that Defendant's default is due to excusable neglect, or that the material facts are in dispute.").

### c.   Plaintiffs Will Suffer Prejudice if Default Judgment is Not Entered

Plaintiffs will suffer prejudice if default judgment is not entered because they "will be deprived of the opportunity to obtain judicial resolution of its claim[s]." *Sky Billiards*, 2016 WL 6661175, at *5; *see also Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014) (finding plaintiff would suffer prejudice absent entry of default judgment because of defendant's "unwillingness to cooperate and defend" against claim).

As demonstrated herein, Mediatonas waged a campaign of lies and disinformation featuring Mr. Eastwood. That campaign traded on Mr. Eastwood's hard earned reputation and goodwill to sell CBD products.  Consequently, Mr. Eastwood is entitled to a judicial resolution of his claims against Mediatonas.

Further, failure to enter default judgment would frustrate the important policy goal of trademark law to protect against consumer deception and (2) protect the trademark holder's investment in goodwill and noteworthiness. *Weil Ceramics & Glass, Inc. v. Dash*, 878 F.2d 659, 672 (3d Cir. 1989); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1132 (Fed. Cir. 1993). And failure to enter default judgment would allow Mediatonas to tarnish Mr. Eastwood's reputation without any recourse. *See Milkovich v. Lorain J. Co.*, 497 U.S. 1, 12 (1990) ("Defamation law developed not only as a means of allowing an individual to vindicate his good name, but also for the purpose of obtaining redress for harm caused by such statements."). Accordingly, default judgment is necessary.

-16-

#### d. Policy Favoring Decision on the Merits Does Not Warrant Denying Default Judgment

Although the Federal Rules and public policy favor a decision on the merits, "[d]efendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Because Plaintiffs have sufficiently pleaded facts supporting their claims, the policy favoring decisions of cases on their merits does not warrant denying default judgment in this instance.

#### e. Sum of Money at Stake

Finally, the Court considers "the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176 (C.D. Cal. 2002). Here, the amount of money at stake does not warrant denying default judgment. Mediatonas misappropriated Mr. Eastwood's name and likeness, traded upon his name and goodwill, and disseminated false and defamatory statements about Mr. Eastwood to sell CBD products. The relief Plaintiffs seek is reasonable, is authorized by statute and case law, and totals in the millions of dollars.

### D. Remedies and Damages[1]

#### 1. Permanent Injunction

On February 26, 2021, the Court entered a preliminary injunction against Mediatonas, because Plaintiffs demonstrated (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in favor of the parties requesting the preliminary relief, and (4) an injunction is in the public interest. (Dkt. 54-1, 55).

The standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the plaintiff must show "actual success" on the merits rather than "a likelihood of success on the merits." *Amoco*

---

[1] *See* Susman Decl. Exh. 13 for a summary of Plaintiffs' damages calculations.

-17-

1  *Prod. Co. v. Vill. of Gambell*, AK, 480 U.S. 531, 546 n. 12 (1987).

2      By virtue of the well-pleaded FAC, Plaintiffs have shown actual success on the

3  merits. Indeed, it is indisputable that Mediatonas illegally used Mr. Eastwood's name

4  and persona to promote and sell CBD products without Plaintiffs' consent in

5  violation of Plaintiffs' rights of publicity. (Susman Decl. ¶¶ 4, 5 Exhs. 3-9; Eastwood

6  Decl. ¶ 2; Bernstein Decl. ¶ 2).  It is equally indisputable that Mediatonas' use of

7  Plaintiffs' trademarks in Mr. Eastwood's name violates Federal trademark law and

8  created a likelihood of confusion, which establishes irreparable harm.  *Phillip Morris*

9  *USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1074 (C.D. Cal. 2004) ("Irreparable harm

10  to reputation and goodwill is presumed as a matter of law where, as here, the plaintiff

11  has demonstrated a likelihood of confusion arising from the infringement."); *Sony*

12  *Computer Entertainment America Inc. v. GameMasters*, 87 F. Supp. 2d 976, 984, 54

13  U.S.P.Q.2d (BNA) 1401, 1407 (N.D. Cal. 1999) ("once plaintiff establishes a

14  likelihood of confusion, 'it is ordinarily presumed that the plaintiff will suffer

15  irreparable harm if injunctive relief does not issue'") (quoting *Rodeo Collection, Ltd.*

16  *v. West Seventh*, 812 F.2d 1215, 1220 (9th Cir. 1987)). Finally, it is indisputable that

17  the statements in the fraudulent "article" are false and defamatory, as Mr. Eastwood

18  does **not** use CBD products or attribute his health and/or successful career to his

19  purported use of CBD products. (Eastwood Decl. ¶ 3).  Mr. Eastwood has **not**

20  developed and announced a line of CBD products, nor stated he will step away from

21  his entertainment career to put more time into his purported wellness business, nor

22  has Mr. Eastwood delivered his purported CBD products to other people, or sold

23  CBD products online.  *Id.* And no film studio or pharmaceutical company is angry

24  with Mr. Eastwood for developing CBD products, because he has not, in fact,

25  developed or sold such products. *Id.*

26      The balance of the equities is clearly in Plaintiffs' favor, as they are only

27  seeking to enjoin illegal activities, and an injunction will not adversely affect any of

28

-18-

Mediatonas' potential legitimate business operations.  *See Phillip Morris USA Inc.*, 352 F. Supp. 2d at 1075.

Accordingly, the Court should make the current injunctive relief against Mediatonas permanent.

## 2.    Monetary Damages

Although the Court must make a determination regarding the damages requested in a motion for default judgment, the Court is "not required to conduct an evidentiary hearing to ascertain damages" where evidence of damages has been provided. *Garden City Boxing Club, Inc. v. Aranda*, 384 F. App'x 688, 689 (9th Cir. 2010). The Court may rely on declarations in lieu of a damages hearing. *See, e.g.*, *CFTC v. Emerald Worldwide Holdings, Inc.*, No. CV03-8339AHM, 2005 WL 1130588, at *13 (C.D. Cal. Apr. 19, 2005) (finding "no reason to hold an evidentiary hearing on damages" because CFTC-submitted documentary evidence was "sufficient" to enter default judgment).[2]

### a.    Misappropriation Claims

### i.    Market Value

In deciding damages on misappropriation claims, a common valuation method for a person who is famous and has appreciable value in his name, image, or identity is the "market value" method.  In *Midler v. Ford Motor Co.*, 849 F.2d 460, 463 (9th Cir. 1988), where Bette Midler sued Ford for using sound-alike of her distinctive singing voice in a television commercial to sell a car, the Ninth Circuit stated: "What [Ford] sought was an attribute of Midler's identity. Its value was what the market would have paid for Midler to have sung the commercial in person." Similarly, in *Waits v. Frito-Lay, Inc.*, 978 F.2 1093, 1102-03 (9th Cir. 1992) one of four components of damages was "the fair market value of [singer Tom Waits'] services."

---

[2] Notwithstanding, Plaintiffs are more than willing to present additional evidence of Plaintiffs' damages at a hearing, if the Court believes the evidence proffered herewith is somehow lacking.

-19-

As the case law demonstrates, Mediatonas should not end up better off for having stolen Mr. Eastwood's publicity rights than the customary and proper approach of asking him for permission and entering into a negotiation.

With the exception of a special Super Bowl television commercial in 2012 ("Halftime in America") themed around America's resilience and recovery from the Great Recession, Mr. Eastwood has not endorsed or lent his name or image to any third party products. Eastwood Decl. ¶ 5; Bernstein Decl. ¶ 5. Halftime in America was a hopeful message to a nation that had been battered by recession. Accordingly, Mr. Eastwood received a below-market value fee that he donated to charity. Eastwood Decl. ¶ 5; Bernstein Decl. ¶¶ 5-7 (stating the amount of the fee and why it was below market value).

The fair market value of Mr. Eastwood's name and likeness in this instance far exceeds the amount he received for Halftime in America for several reasons:

First, Halftime in America was not intended to sell cars but to inspire a nation. It was consistent with Mr. Eastwood's reputation for honesty, hard work, integrity, and public service. Eastwood Decl. ¶¶ 4, 5; Bernstein Decl. ¶¶ 5-7; *See Hirsch v. S.C. Johnson & Son, Inc.*, 280 N.W.2d 129, 134-35 (Wis. 1979) ("[plaintiff] over a period of years assiduously cultivated a reputation not only for skill as an athlete, but as an exemplary person whose identity was associated with sportsmanship and high qualities of character, and where the record demonstrates that much time and effort was devoted to that purpose"). In sharp contrast to Halftime in America, the defamatory "article" was made to sell CBD products in the most crass manner possible: through email spam and a fraudulent "interview" with Mr. Eastwood in which he announced his retirement from his life's work. If Mr. Eastwood were to ever "sell out" and endorse such a product at odds with his image (he wouldn't), he would not do so for the amount he was paid for Halftime in America. Bernstein Decl. ¶ 7.

-20-

Second, Halftime in America aired one time. The defamatory "article" has been disseminated widely around the internet for months and **will continue to be seen by viewers long after this litigation is complete**. Eastwood Decl. ¶ 6; Bernstein Decl. ¶ 7.

Third, Halftime in America was made nine years ago, and the value of an endorsement by Mr. Eastwood has only increased since then. Bernstein Decl. ¶ 7.

Fourth, the very fact that Mr. Eastwood refuses to endorse products or do ads increases the value of his name and persona. *Id.*; *see Grant v Esquire*, 367 F. Supp. 876 (S.D.N.Y. 1973) (in which the Court recognized that Cary Grant's refusal to do advertisement or endorsement deals might increase the value of his endorsement).

Fifth, it is axiomatic that celebrities seek to be identified with higher end products—not online sales of products of questionable legality.[3]  Any association with the products sold through the defamatory "article" would diminish Mr. Eastwood's brand and therefore require payment of a large amount. *Id.*

Accordingly, Plaintiffs believe the fair market value of Mr. Eastwood's name and persona justify an award of $10 million in actual damages. *Id.*

### ii.   Injury to Peace, Happiness and Feelings

> Although the injury stemming from violation of the right of publicity "may be largely, or even wholly, of an economic or material nature," we have recognized that "it is quite possible that the appropriation of the identity of a celebrity may induce humiliation, embarrassment, and mental distress." [¶]  In assessing the propriety of mental distress damages, our focus is properly directed to the nature of the infringement and its embarrassing impact on the plaintiff. . . . . In California, mental distress damages may be recovered for "shame, humiliation, embarrassment, and anger."

*Waits*, 978 F.2d at 1103.

---

[3] *See e.g.* 7 U.S.C. 1621 *et seq*. and 21 U.S.C. § 801 *et seq*. which regulate sales of cannabis and CBD products.

-21-

When Mr. Eastwood saw the fraudulent "article," he was shocked and angry because of his strong opposition to doing ads or endorsements.  Eastwood Decl. ¶ 6. These feelings grew because the fraudulent "article" spread vicious lies about Mr. Eastwood and its dissemination through email spam was unseemly.  *Id*. In addition, Mr. Eastwood's representatives have received calls asking if the fraudulent "article" was true, and whether he was leaving his career to focus on CBD products. Eastwood Decl. *Id*; Bernstein Decl. ¶ 8.

Accordingly, Plaintiffs believe emotional distress damages of $1 million are justified.

### iii.    Injury to Reputation and Goodwill

> We have no doubt, in light of general tort liability principles, that where the misappropriation of identity causes injury to reputation, compensation for such injury is appropriate. See Cal. Civ. Code § 3333 (available damages are those "which will compensate for all of the detriment" caused by defendant's tortious conduct). Reputational damages, moreover, have been awarded in right of publicity cases.

*Waits*, 978 F.2d at 1104 (*citing Clark v. Celeb Publishing, Inc*., 530 F. Supp. 979, 984 (S.D.N.Y. 1981) (applying California law); *Hirsch v. S.C. Johnson & Son, Inc*., 90 Wis. 2d 379, 280 N.W.2d 129, 138 (1979)).

The fraudulent "article" injured Mr. Eastwood's reputation and goodwill because it tarnished the reputation and goodwill he has spent a lifetime cultivating through his films as an actor, director and producer, and through his civil service, most notably as the Mayor of Carmel-by-the-Sea.  Eastwood Decl. ¶¶ 4-8; Bernstein Decl. 5-8.  The idea that Mr. Eastwood would retire from the business that he loves to devote himself to products being sold through cheap online ads is an insult to Mr. Eastwood, caused serious injury to his reputation and goodwill, and justifies an award of at least $1 million. *Id*.

-22-

### iv.     Punitive Damages

Section 3344 and common law allow for an award of punitive damages for misappropriation. In California, exemplary or punitive damages are available "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). The statute defines "malice" in pertinent part as "despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." *Id*. § 3294(c)(1). "Clear and convincing evidence means evidence sufficient to support a finding of 'high probability.'" *Waits*, 978 F.2d at 1105.  Plaintiffs meet this threshold.

It is indisputable that Mediatonas acted with conscious disregard of Plaintiffs' rights.  **The whole point of the defamatory "article" was to consciously disregard Plaintiffs' rights and capitalize on Mr. Eastwood's renowned and goodwill as an icon of the motion picture industry**.  And it was not just Mr. Eastwood. The defamatory "article" contained false testimonials from Terry Bradshaw, Sam Elliott, Michael J. Fox, and Garth Brooks about Mr. Eastwood's purported CBD product.

Because "the quintessence of punitive damages is to deter future misconduct by the defendant," the amount of punitive damage should be that which is "necessary to properly punish and deter." *Adams v. Murakami*, 54 Cal. 3d 105, 110, 813 P.2d 1348 (1991).

Given Mediatonas' egregious conduct, and its willingness to malign Mr. Eastwood and others for profit, Plaintiffs request punitive damages in the amount of $10 million. Eastwood Decl. ¶¶ 6-8; Bernstein Decl. ¶ 8.

### v.     Attorneys' Fees and Costs

Civil Code Section 3344(a) and Section 3344.1(a)(1) provide in pertinent part: "The prevailing party in any action under this section **shall** also be entitled to

-23-

attorney's fees and costs." (Emphasis added). "The mandatory fee provision of section 3344, subdivision (a) leaves no room for ambiguity. Whether the course is sound is not for us to say. This is the course the Legislature has chosen and, until that body changes course, we must enforce the rule." *Kirby v. Sega of Am., Inc*., 144 Cal. App. 4th 47, 62 (2006).

"[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000). "The reasonable hourly rate is that prevailing in the community for similar work." *Id*.

The services performed by Plaintiffs' counsel were reasonable and necessary. The Susman Declaration attached hereto in support of this Motion is *prima facie* evidence that those hours were necessary and are reasonable. *See Raining Data Corp. v. Barrenechea*, 175 Cal. App. 4th 1363, 1375 (2009); *Bernardi v. County of Monterey*, 167 Cal. App. 4th 1379, 1398 (2008); *Cyma (U.S.A.) Ltd. v. Lumondi, Inc.*, 2011 WL 1483394, at *2-3 (N.D. Cal. 2011). Accordingly, the Court should determine that Plaintiffs' counsel's hours were reasonable.

Plaintiffs' counsel's rate for the work performed is also reasonable. More than 10 years ago, courts recognized that $500 an hour and higher are reasonable hourly rates in the Los Angeles community. *See e.g., Maughan v. Google Technology, Inc*., 143 Cal. App. 4th 1242, 1249(2006); *Building a Better Redondo, Inc. v. City of Redondo Beach*, 203 Cal. App. 4th 852, 871-73 (2012) (appellate court upheld a lodestar fee award with Los Angeles hourly rates of $500 to $550). Plaintiffs' request for fees between $490 and $590 per hour are imminently reasonable because they are less than the recognized reasonable hourly average in the area.

Plaintiffs have incurred attorneys' fees in the amount of $77,692.00. Susman Decl. ¶¶ 12-15 Ex. 12. Plaintiffs have incurred costs in the amount of $933.33. *Id*.

### b.     Trademark Claims

Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a) provides that, "subject to the principles of equity," a prevailing "plaintiff shall be entitled … to recover . . . any damages sustained by the plaintiff." Damages may be trebled in cases where the infringement of a trademark was intentional.  15 U.S.C. 1117 (b). Actual damages include injury to reputation and goodwill.  *Playboy Enterprises, Inc. v. Baccarat Clothing Co*., 692 F.2d 1272, 1275 (9th Cir. 1982).

### i.     Actual Damages

Because Mr. Eastwood does not seek a double recovery, he does not oppose applying the same actual damages requested for misappropriation for his trademark claims. *See Waits,* 978 F.2d at 1111.  Consequently, Plaintiffs request the same actual damages in the amount of $12 million.

### ii.     Enhanced Damages

Courts may enhance damages based on a finding of willful infringement or to compensate a plaintiff for actual injuries, but the award cannot be punitive in nature.  *See Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1115 (9th Cir. 2012) (reversing award of enhanced damages where it was based on the court's intent to punish the defendant).  Enhanced damages are also allowed where damage calculations are imprecise and courts perceive a plaintiff to be undercompensated. *Taco Cabana Int'l, Inc. v. Two Pesos, Inc*., 932 F.2d 1113, 1127 (5th Cir. 1991); *see also Clearline Techs. Ltd. v. Cooper B-Line, Inc*., 948 F. Supp. 2d 691, 709 (S.D. Tex. 2013) ("Enhancement is appropriate where the damages awarded fail to adequately compensate a plaintiff.").

When considering enhanced damages, courts evaluate the impact of the unlawful conduct directly on the plaintiff, the systemic distortion that the defendant's conduct had on the relevant market, and the costs incurred by the

plaintiff to mitigate its damages. *See ALPO Petfoods v. Ralston Purina Co*., 778 F. Supp. 555, 564 (D.D.C. 1991).

Here, the impact on Mr. Eastwood cannot be underestimated. As discussed above, Mr. Eastwood's reputation and goodwill are the result of years of hard work. The damage caused to Mr. Eastwood by Mediatonas' online scam are difficult to calculate. In the FAC, Plaintiffs prayed for treble damages. Accordingly, to the extent the Court finds that Plaintiffs would be undercompensated by the actual and punitive damages it awards, Plaintiffs respectfully request that it award enhanced damages up to three times the amount of Plaintiffs' actual damages.

### iii.    Attorneys' Fees

Notwithstanding that Plaintiffs are already entitled to attorneys' fees under Cal. Civ. Code Section 3344, they are also entitled to such fees under Section 1117(a) of the Lanham Act, which provides, "The court in exceptional cases may award reasonable attorney fees to the prevailing party," 15 U.S.C.A. § 1117(a).

At issue is whether this case falls within the scope of "exceptional cases" of trademark infringement arising under the Lanham Act. The Ninth Circuit has interpreted the term "exceptional" to mean that "the defendant acted maliciously, fraudulently, deliberately, or willfully." *Love v. Associated Newspapers*, Ltd., 611 F.3d 601, 615 (9th Cir. 2010).

Here, Plaintiffs pleaded in the FAC that Mediatonas' actions were "knowingly false, and are intentionally designed to capitalize on the goodwill, recognition, and fame associated with Mr. Eastwood" and Mediatonas "willfully, knowingly, and maliciously deceived and confused the relevant consuming public." FAC ¶¶ 5, 47, 57. Because the factual allegations of the FAC should be taken as true upon default, this case falls within the scope of "exceptional cases." *See Zynga Game Network Inc. v. Williams*, 2011 WL 2560240 (N.D. Cal. June 28, 2011) (holding that, upon entry of default, the plaintiffs' allegations in the pleading are

-26-

1  sufficient to establish that this is an "exceptional" case for purposes of 15 U.S.C. §

2  1117(a)); *Discovery Communications, Inc. v. Animal Planet, Inc*., 172 F. Supp. 2d

3  1282 (C.D. Cal. 2001) (holding that plaintiff's willful infringement and dilution of

4  television programmer's "Animal Planet" mark, and failure to appear and file

5  answer, resulting in default judgment, were exceptional circumstances entitling

6  plaintiff to award of attorney fees and costs).  This is indisputably an exceptional

7  case under the Lanham Act, warranting an award of attorneys' fees.

8      As discussed above, Plaintiffs' attorneys' fees total $77,692.00 Susman Decl.

9  ¶¶ 12-15 Exh. 12.

### c.    Defamation and False Light

### i.    Actual Damages

12     As a result of Mediatonas' defamation, Mr. Eastwood is entitled "the amount

13  which will compensate for all the detriment proximately caused" by the defamation.

14  *Raven's Cove Townhomes, Inc. v. Knuppe Development Co*., 114 Cal. App. 3d 783,

15  801 (1981) (quoting Civ. Code § 3333). Such compensatory damages include

16  damages for injury not only to his reputation but damages for emotional distress—

17  i.e., shame, anguish, humiliation. *Wong v. Jing*, 189 Cal. App. 4th 1354, 1379

18  (2010).

19     As described above, the false statements in the fraudulent "article" have

20  harmed Mr. Eastwood in his profession, damaged his reputation, and caused anger

21  and other hurt feelings. Eastwood ¶¶ 3, 6-8; Bernstein Decl. ¶¶ 7-8.

22     Based on the foregoing, and to the extent the Court finds that these are not

23  duplicative of Plaintiffs' other damages, Mr. Eastwood requests damages up to $2

24  million. *Id*.

### ii.    Punitive Damages

26     A plaintiff who proves defamation may also seek punitive damages. *Wong*,

27  189 Cal. App. 4th at 1379.  It is indisputable that the fraudulent "article" was created

28

-27-

and disseminated with actual malice, in conscious disregard of Mr. Eastwood's rights, thereby justifying an award of punitive damages. *See supra*; Eastwood ¶¶ 3, 6-8; Bernstein Decl. ¶¶ 7-8.

Based on the foregoing, and to the extent the Court finds that these are not duplicative of Plaintiffs' other damages, Mr. Eastwood requests punitive damages up to $6 million. *Id*.

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant the Motion, enter final judgment by default against Mediatonas, and issue a final order in the form of the proposed Order submitted herewith.

Dated: May 7, 2021                    NOLAN HEIMANN LLP

                                      By: _____
                                      Jordan Susman
                                      Attorneys for Plaintiffs
                                      Clint Eastwood
                                      and Garrapata, LLC